UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENTON SMALLWOOD, CATHERINE CHRISTENSEN, RAHSAAN RENFORD, and BERTHIL IVARSON, individually and on behalf of the Class, and others similarly situated, | ) ) ) ) ) ) | CASE NO. 1:09-CV-4072 |
| **Plaintiffs,** | ) ) | |
| vs. | ) ) ) | Magistrate Judge Morton Denlow |
| ILLINOIS BELL TELEPHONE COMPANY, | ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.     INTRODUCTION**

The parties seek final approval of the class action settlement preliminarily approved by the Court on November 22, 2010 ("the Settlement"). (D.E. 123.) As shown below, the Settlement is fair, reasonable and adequate, and sufficient notice was provided to the class members. Furthermore, no class member opposes the settlement. For these reasons, the parties respectfully request that the Court grant this motion.

**II.     STATEMENT OF FACTS**

   **A.     Factual and Procedural Background**

The factual and procedural background of this case are well known to this Court and were set forth in the parties' memorandum of law submitted in support of their Joint Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class. (D.E. 118.) As explained therein, this is a collective and class action lawsuit for unpaid overtime

wages brought by Plaintiffs Kenton Smallwood, Catherine Christensen, Rahsaan Renford, and Berthil Ivarson, (collectively, the "Named Plaintiffs") on behalf of themselves and all other Outside Plant Engineers employed by Defendant Illinois Bell Telephone Company, (hereinafter "Defendant"). In the Complaint, the Named Plaintiffs alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and the Illinois Minimum Wage Law, 810 ILCS 105/1 et seq. (the "IMWL") by misclassifying them as exempt and thus failing to pay overtime wages when they worked more than forty hours in a workweek. On April 28, 2010, the Court conditionally certified the action under the FLSA, 29 U.S.C. § 216(b) and authorized Plaintiffs to send judicial notice to the putative collective class members. (D.E. 72.) Including the four Named Plaintiffs, there are now 160 Outside Plant Engineers involved in the case. (Declaration of Timothy C. Selander ("Selander Decl.") ¶ 3.)[1]

On July 20, 2010, the parties asked the Court to issue a stay to allow the parties to attempt to settle this case along with two related matters, Wittemann v. Wisconsin Bell, Inc., No. 09-cv-440 (W.D. Wis.) and Wlotkowski v. Michigan Bell Tel. Co., No. 09-11898 (E.D. Mich.). (D.E. 104.) The Court granted the motion, staying the case until October 19, 2010. (Id.) On October 7, 2010, the parties participated in a full-day mediation with noted wage-and-hour mediator David Rotman of Gregorio Haldeman Piazza Rotman & Frank. (Selander Decl. ¶ 4.) After a full day of arm's-length negotiations, the parties agreed to this Settlement. (Id.) As explained more fully below, the parties believe the Settlement is fair, reasonable, and equitable and that it satisfies all criteria for settlement approval under Seventh Circuit law.

**B.     The Court's Preliminary Approval Order**

---

[1] The Declaration of Timothy C. Selander is attached as Exhibit A.

On November 18, 2010, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class. (D.E. 118.) The Court held a telephonic hearing on the Motion on November 22, 2010 and granted the motion the same day (the "Preliminary Approval Order"). (D.E. 123.) In the Preliminary Approval Order, the Court found that the proposed settlement was "within the range of possible approval'" and "was the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits." (Id.) The Court further found that the assistance of an experienced mediator reinforced its finding that the proposed settlement was non-collusive. (Id.)

The Court also certified the following settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Settlement Class"): all individuals employed by Defendant in the job title "Manager, Outside Plant Planning and Engineering Design" at any time between June 9, 2006 and May 16, 2009 who are not Plaintiffs as defined in Paragraph 1(e) of the parties' Joint Stipulation of Settlement. (Id.) The Court found that the Settlement Class met "all of the requirements for settlement class certification under Fed. R. Civ. P. 23(a) and (b)(3). (Id.) Specifically, the Court held that the Settlement Class met the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). (Id.) The Court also approved the parties' proposed Notice of Settlement (the "Notice"), finding that it fully complied with due process and the requirements of Rule 23(c)(2)(B), and ordered the parties to distribute the Notice to the Settlement Class. (Id.)

**C.     The Notice Period**

The parties retained Analytics, Inc. ("Analytics") to administer the Settlement and Notice process. (Selander Decl. ¶ 5.) In accordance with the Court's Preliminary Approval Order, Analytics mailed the Notice to the 184 Class Members on November 24, 2010.[2] (Id. at ¶ 6.) The Notice informed the Settlement Class Members of their right to (1) file a claim form and receive a settlement payment; (2) object to the terms of the Settlement; or (3) opt-out of the Settlement, on or before January 4, 2011. (See D.E. 121, Ex. 2.) Analytics also mailed a similar notice to the 160 Named and Opt-In Plaintiffs. (Selander Decl. ¶ 6.)

The Notice period closed on January 4, 2011. (D.E. 123; Selander Decl. ¶ 9.) As of January 5, 2011, 122 of the 184 Settlement Class Members fully completed and timely accepted the Settlement. (Id. at ¶10.) Only six Settlement Class Members opted-out of the Settlement, and none objected. (Id.) In addition, all 160 Named and Opt-In Plaintiffs fully completed and timely accepted the Settlement. (Id.)

**III.   THE PARTIES HAVE SATISFIED THE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER**

Under Rule 23(c)(2)(B), a notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In its Preliminary Approval Order, the Court held that the form, content, proposed distribution method and timeline of the Notice met the requirements of Rule

---

[2] Due to administrative difficulties, Analytics mailed the Notice one day later than originally anticipated by the parties. In order to compensate for the delay, the parties agreed that claim form and opt-outs received on January 5, 2011 would be considered timely. (Selander Decl. ¶ 9.)

4

23 and due process, and was the best possible notice under the circumstances. (See D.E. 123.) Where the names and addresses of the Settlement Class Members are easily ascertainable, as was the case here, individual notice through the mail is "clearly the 'best notice practicable.'" Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

On November 24, 2010, Analytics mailed the Notice to the Settlement Class Members. (Selander Decl. ¶ 6.) Prior to the mailing, Defendant reviewed its employee records to determine the names and addresses for each Settlement Class Member and provided this information to Analytics. (Id. ¶ 7.) Analytics then cross-referenced the addresses against the United States Postal Service National Change of Address Database and updated the address information accordingly. (Id. ¶ 8.) Only one Notice was returned to Analytics by the U.S. Postal Service as undeliverable, and no further address information was available for this individual. (Id. ¶ 11.) Analytics also mailed a reminder notice to 117 unresponsive Settlement Class Members on December 15, 2010. (Id. ¶ 12.) During the Notice period, Plaintiffs' Counsel promptly and diligently responded to numerous emails and phone calls from Settlement Class Members. (Id. ¶ 14.) As a result of the parties' diligent efforts to disseminate the Notice, sixty-six percent (66%) of the Settlement Class Members responded to the Notice and accepted the settlement offer. (Id. ¶ 10.) Accordingly, the parties' efforts to inform the Settlement Class Members meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).

### IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Settlement of class action litigation is favored by federal courts. Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996). Although settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate. Id. In Armstrong v. Bd. Of Sch. Dirs. of City of Milwaukee, the

Seventh Circuit held that the district court's primary role in the settlement approval process is to protect the interest of the class and the public:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by* Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). In determining whether a settlement is fair, adequate, and reasonable, courts in the Seventh Circuit consider a variety of factors, including:

> (a) the strength of plaintiffs' case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed.

In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citing Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 308 (7th Cir. 1985)). The court must also consider the facts in the light most favorable to settlement. Id. In other words, "the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." Id. As explained below, after taking all of these factors into consideration, the Court should reach one conclusion: the Settlement is fair, adequate, and reasonable.

### A. Factor One: The Strength of Plaintiffs' Case Weighed Against the Settlement Offer

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. See Isby, 75 F.3d at 1199. In considering a proposed settlement however, the Seventh Circuit has cautioned district courts "to refrain from resolving the merits of the controversy or making a precise determination of the

6

parties' respective legal rights." EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985). Rather, the district court must focus on general principles of fairness and reasonableness, not on the substantive law governing the plaintiffs' claims. Id. A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); Hiram Walker & Sons, Inc., 768 F.2d at 891 (settlement approved when "there [was] no showing that the amounts received by the beneficiaries was totally inadequate").

Plaintiffs maintain that there are many strong aspects of their case, including the fact that Defendant uniformly reclassified its Outside Plant Engineers from exempt to non-exempt. Had Plaintiffs continued to litigate the case, however, they would have faced many difficult substantive and procedural obstacles. In addition to the ever-present risks and costs of trial and appeal, Plaintiffs would have expended significant resources on discovery matters and experts. In addition, Plaintiffs faced a number of procedural obstacles that may have prevented them from even obtaining a trial, including motions for decertification of the FLSA conditional class, class certification, and summary judgment. Despite these significant risks, Defendant agreed to pay a significant and substantial amount to Plaintiffs and the Settlement Class Members. Based on payroll data and individualized calculations conducted by Plaintiffs' Counsel, each Settlement Class Member will recover approximately fifty percent (50%) of his or her estimated overtime damages. (Selander Decl. ¶ 13.) Accordingly, weighed against the risks, the Settlement provides a substantial and immediate benefit to the Settlement Class Members.

  **B.**   **Factor Two: The Complexity, Length, and Expense of Further Litigation**

In evaluating the second factor, the Court should compare the complexity, length, and expense of further litigation with the immediate benefit of the proposed settlement. In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1019. This case involved the claims of 160 Plaintiffs and 184 class members. With further litigation, Plaintiffs faced the risk that Defendant would seek individualized discovery from the Plaintiffs, as well as class-related discovery. Such discovery would not only have required extensive resources, but it would have delayed the conclusion of the litigation. In addition to difficult, time consuming and costly discovery matters, continuing the litigation would also lead to significant and complex motion practice. Indeed, prior to settlement, Plaintiffs had not moved for, let alone won, a motion for Rule 23 class certification. Had Plaintiffs moved for class certification, Defendant would have vigorously opposed the motion. In other words, there was a significant risk that the Settlement Class Members would not have had the opportunity to proceed to trial, let alone recover. Even assuming that Plaintiffs would have won a motion for class certification, there was a possibility that the Court would have only certified a subset of the overall class. Furthermore, before trial, Defendant fully intended to move for summary judgment on its exemption defense, as well as damages issues. Weighed against these considerations, the Settlement provides a substantial and immediate benefit to the Plaintiffs and Settlement Class Members.

    **C.**    **Factor Three: The Settlement Was the Result of Arm's-Length Negotiations Free From Collusion**

In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement is "intense, vigorous, and at arm's length." In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. Id. (giving "significant weight on the unanimously strong endorsement of these settlements" by "well-

8

respected attorneys"); <u>Alliance to End Repression v. City of Chicago</u>, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); <u>Susquehanna Corp. v. Korholz</u>, 84 F.R.D. 316, 321 (N.D. Ill. 1979) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate); <u>Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers</u>, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[t]he opinion of competent counsel weighs in favor of approval of a settlement."); <u>Berenson v. Faneuil Hall Marketplace</u>, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

The parties reached this Settlement only after engaging in hard-fought and adversarial litigation, including months of investigation and discovery, the review of thousands of documents, and detailed damages analyses. The parties' respective counsel are experienced in the litigation, certification, trial, and settlement of wage-and-hour cases, including large class actions similar to this case. After the parties agreed to attend a mediation session, they retained a well-respected mediator with vast experience in wage-and-hour litigation and negotiations. Accordingly, the Court should find that this factor weighs in favor of granting final settlement approval.

### D. Factor Four: Opinion of Counsel

In its Preliminary Approval Order, the Court appointed Plaintiffs' Counsel, Nichols Kaster, PLLP as Class Counsel, finding that the firm has "substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions" and that "other Courts

9

have repeatedly found Nichols Kaster to be adequate class counsel." (D.E. 123.) Class Counsel, as well as Defendant's Counsel, fully support the Settlement as fair, reasonable, and adequate, and it is appropriate for the Court to place significant weight on this unanimous and strong endorsement. See In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1020.

### E. Factor Five: Lack of Objections to the Settlement

Lack of objections from settlement class members to a settlement proposal is a significant factor in determining whether the proposed settlement is reasonable to the class as a whole. Mangone v. First USA Bank, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001); see also Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 251 (D.N.J. 2005) (concluding that "[s]uch a small number of objections in relation to the size of the Class favors approval of the request."); Strougo v.Brazilian Equity Fund, Inc., 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'")(citations omitted); Hispanics United of DuPage County v. Village of Addison, Illinois, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected).

In this case, *not one* Settlement Class Member objected to the Settlement and only six excluded themselves. More than sixty-five percent (65%) of the Settlement Class accepted the Settlement, along with one hundred percent of the Named and Opt-In Plaintiffs. Accordingly, this factor also weighs in favor of granting final approval of the Settlement.

### F. Factor Six: The Stage of the Proceedings and Discovery Completed

Since filing the Complaint, both parties has investigated the facts and taken extensive discovery regarding the claims of Plaintiffs and the putative Rule 23 Class as well as Defendant's defenses. Both parties propounded written discovery and produced thousands of responsive documents. The parties also conducted numerous depositions, with Defendant deposing three of the Named Plaintiffs and Plaintiffs' Counsel deposing a number of Defendant's management employees. (Selander Decl. ¶¶ 17-18.) With respect to motion practice, Plaintiffs moved for FLSA conditional certification, which Defendant opposed. (See D.E. 54-57, 65, 68, 70.) Plaintiffs ultimately prevailed on this critical motion. (D.E. 71-73.) Plaintiffs' success and corresponding judicial notice process resulted in more than 160 current and former employees joining the case as Named and Opt-In Plaintiffs. (Selander Decl. ¶ 3.) In preparation for mediation, the parties exchanged tens of thousands of lines of timesheet and payroll data and spent a considerable amount of reviewing and analyzing the data, along with hundreds of personnel files, in order to estimate each Plaintiff and Class Member's potential damages. (Id. ¶ 16.) Thus, at this stage of the proceedings, the parties are well aware of the facts and legal issues in the case, as well as the corresponding risks. For these reasons, this factor also weighs in favor of the Court granting final approval.

## V. INCENTIVE AWARDS ARE APPROPRIATE

In the Preliminary Approval Motion the parties informed the Court that the Settlement called for each of the four Named Plaintiffs to receive an "incentive award" or "service payment" of $10,000 in addition to any payment that they receive as a *pro rata* settlement share. In light of their efforts resulting in a settlement on behalf of the Plaintiffs and Rule 23 Class Members, these payments are reasonable and appropriate. Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).

Courts in this Circuit have approved incentive awards as high as $20,000 per Named Plaintiff. See Berger v. Xerox Corp. Retirement Income Guarantee Plan, 2004 WL 287902, at *3 (S.D. Ill. 2004). Plaintiffs' request of $10,000 for the Named Plaintiffs/Class Representatives is well within the range of awards commonly approved. Retsky Family Ltd. P'ship v. Price Waterhouse LLP, 2001 WL 1568856, at *4 (N.D. Ill. 2001) (approving incentive award of $7,500); Gaskill v. Gordon, 1995 WL 746091, at *4 (N.D. Ill. 1995) (awarding named plaintiffs $6,000 each in incentive awards). Indeed, the same service payments were approved and awarded in the Wlotkowski matter. (Selander Decl. ¶ 19.)

In Cook v. Niedert, the Seventh Circuit held that the relevant factors to consider on a request for an incentive award "include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." 142 F.3d 1004, 1016 (citing Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1267 (N.D. Ill. 1993)). All of these factors weigh in favor of awarding the requested payments.

It is noteworthy that the Named Plaintiffs are all current employees. They took the bold step of initiating this action when other current employees – their coworkers – would not. Their decision to step forward substantially benefited the more than 300 current and former coworkers who joined this case as Opt-In Plaintiffs or Settlement Class Members. Without their efforts, this case would not have been brought and this settlement would not have been achieved. The Named Plaintiffs were also actively involved in the prosecution of the case. Each responded to written discovery, provided declarations to Plaintiffs' Counsel when requested, and sat for depositions when called. Clearly the Opt-In Plaintiffs and Settlement Class Members have

12

reaped substantial benefits as a result of their actions, and the requested incentive awards are well justified.

## VI. CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

As explained by Plaintiffs in their concurrently filed Motion for Attorneys' Fees and Costs, Class Counsel seeks an award of thirty-three and one-third percent (33 ⅓%) of the total settlement amount and $20,971.20 in costs. Given the time, resources, and outcome of the litigation, Plaintiffs' request is reasonable and should also be approved.

## VII. CONCLUSION

For all of the foregoing reasons, the parties respectfully request that the Court enter the Order attached hereto (1) granting final approval of the Settlement, finding that it is fair, reasonable, and adequate; (2) approving the incentive awards, as set forth in the Settlement; (3) approving Plaintiffs' Petition for an Award of Attorneys' Fees and Costs; and (4) dismissing the action with prejudice.


Dated: January 11, 2011    By:    /s/ Timothy C. Selander
                                  Paul J. Lukas, MN Bar No. 22084X
                                  Matthew H. Morgan, MN Bar No. 304657
                                  Timothy C. Selander, MN Bar No. 0387016
                                  **NICHOLS KASTER, PLLP**
                                  4600 IDS Center, 80 South 8th Street
                                  Minneapolis, MN  55402
                                  Telephone: (612) 256-3200
                                  Fax: (612) 215-6870

                                  **WERMAN LAW OFFICE**
                                  Douglas M. Werman
                                  Werman Law Office
                                  77 West Washington, Suite 1402
                                  Chicago, Illinois 60602
                                  Telephone: (312) 419-1008

                                  **Attorneys for Plaintiffs and the Class**

By:    */s/ Kenneth W. Gage*
Kenneth W. Gage, IL Bar No. 6291335
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6146
Fax: (312) 499-6146

Stephen B. Mead
Senior Attorney
AT&T Services, Inc.
225 West Randolph Street
Chicago, IL 60606, Floor 25B
Telephone: (312) 727-3506
Fax: (312) 845-8976

**Counsel for Defendant Illinois Bell Telephone Company**

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that true and correct copies of the **Memorandum of Law in Support of Joint Motion for Final Approval of Class Action Settlement and Exhibit A** were served and filed on January 11, 2011 with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following:

**Stacey A. Bentley:** staceybentley@paulhastings.com;
**E. Michelle Drake:** drake@nka.com;
**Kenneth W. Gage:** kennethgage@paulhastings.com;
**Paul J. Lukas:** lukas@nka.com;
**Stephen Boyd Mead:** Stephen.mead@att.com;
**Matthew H. Morgan:** morgan@nka.com;
**Timothy C. Selander:** selander@nka.com; and
**Douglas M. Werman:** dwerman@flsalaw.com.

s/*Timothy C. Selander*
Nichols Kaster, PLLP
4600 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
Email: selander@nka.com